## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **KENNETH FILIAK**, individually and on behalf of all others similarly situated,<br><br>     *Plaintiff*,<br><br>v.<br><br>**MIDAS INTERNATIONAL CORPORATION**, a Delaware corporation, and **JOHN DOES 1-100**,<br><br>     *Defendants*. | Case No.<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiff Kenneth Filiak ("Filiak" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Midas International Corporation ("Midas") and the John Doe Defendants ("John Does") (collectively, the "Defendants"), to enjoin and seek damages for the Defendants' repeated and unauthorized autodialed calls to the cellular telephones of consumers nationwide in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). Plaintiff seeks to obtain redress and injunctive relief for all persons similarly situated and injured by the Defendants' calls. Plaintiff alleges upon personal knowledge, information, and belief, including investigation conducted by their attorneys, the following circumstances:

## NATURE OF THE ACTION

1.    Midas is a chain of automotive service centers. It is one of the largest providers of

automotive services, offering brake, maintenance, tires, exhaust, steering and suspension services at more than 2,000 franchised, licensed, and company-owned shops in 13 countries, including nearly 1,300 in the United States and Canada. To improve its services and to ultimately increase revenue, it also conducts telephone surveys by making autodialed calls to thousands of consumers nationwide.

2.      To collect its survey data, the John Doe Defendants, on behalf of Midas and for Midas's benefit, repeatedly made (and continue to make) autodialed telephone calls to the cellular telephones of Plaintiff and other members of the putative Classes without consent, all in violation of the TCPA.

3.      Midas hired John Does to make calls for the benefit of Midas.

4.      By making these autodialed calls, the Defendants caused harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompany the receipt of repeated autodialed calls. Plaintiff and the other Class members were further harmed insofar as the Defendants' calls interfered with the use and enjoyment of their cellular telephones. Plaintiff and members of the Classes also incurred charges from their wireless carriers for the receipt of these autodialed calls to their cellular telephones and a reduction in their allotment of minutes.

5.      The TCPA was enacted to protect consumers from autodialed phone calls like those alleged and described herein. In response to the Defendants' unlawful conduct, Plaintiff files this lawsuit seeking injunctive relief, requiring the Defendants to cease all autodialed telephone calling activities to cellular telephones without first obtaining prior express consent as well as an award of statutory damages to the members of the Classes under the TCPA, costs, and reasonable attorneys' fees.

CLASS ACTION COMPLAINT FOR DAMAGES                                          2
AND INJUNCTIVE RELIF

**PARTIES**

6.     Plaintiff Kenneth Filiak is a natural person over the age of eighteen (18) and a citizen of the State of Hawaii.

7.     Defendant Midas is a Delaware corporation with a principal place of business located at 1300 Arlington Heights Rd., Itasca, Illinois 60143. Midas does business throughout the United States, including in the State of Illinois and in this District.

8.     Defendant John Does 1-100 are third-party companies hired by Midas to make autodialed survey calls on Midas's behalf and for its benefit. On information and belief, John Does received actual or apparent authority to make such survey calls, and/or Midas has ratified said survey calls and received the benefits of such calls. The identities of the John Doe Defendants will be obtainable through discovery of Midas's records, which will plainly contain information about the entities Midas hired to make the unlawful and offensive calls on its own behalf and for its own benefit.

9.     During all relevant times, each of the Defendants, whether actually named or fictitiously named, was the agent of the other Defendants, whether actually named or fictitiously named, and was during all relevant times acting and conducting itself within the purpose and scope of such agency. Plaintiff is informed and believes, and alleges thereon, that during all relevant times mentioned herein each Defendant, whether actually or fictitiously named was the principal, agent or employee of each other Defendant, and in acting and conducting itself as such principal, or within the course and scope of such employment or agency, took at least some part in the acts and omissions hereinafter set forth by reason of which each defendant is liable to Plaintiff for the relief sought herein. At all times relevant herein, the Defendants ratified the unlawful conduct of the other Defendant, who were acting within the scope of their agency or

CLASS ACTION COMPLAINT FOR DAMAGES                                    3
AND INJUNCTIVE RELIF

employment, by accepting the benefits of any transaction with knowledge of the wrongdoing, or otherwise by failure to repudiate or retract the misconduct or wrongdoing.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because his TCPA claims arise under the laws of the United States, specifically 47 U.S.C. § 227.

11. This Court has personal jurisdiction over Defendant Midas because it maintains its corporate headquarters in this District, regularly conducts business in this District, and a substantial part of the events giving rise to the claims asserted herein occurred in, were directed from, and/or emanated from this District. The Court further has jurisdiction over the John Doe defendants because the John Doe Defendants were controlled by Midas and received the benefits from being hired by (and availing themselves to) Midas to place autodialed telephone calls on Midas's behalf.

12. Venue is proper because Midas is headquartered in this District, regularly conducts business in this District, and a substantial part of the events giving rise to the claims asserted herein occurred in, were directed from, and/or emanated from this District.

## COMMON FACTUAL ALLEGATIONS

13. The Defendants conduct telephone surveys using widespread telephone survey campaigns through an autodialer on a broad range of topics in order to better understand consumers and to receive compensation.

14. In placing the calls that form the basis of this Complaint, the Defendants utilized an automatic telephone dialing system. Specifically, the hardware and software used by the Defendants has the capacity to generate and store random numbers, and/or receive and store lists

CLASS ACTION COMPLAINT FOR DAMAGES 4
AND INJUNCTIVE RELIF

of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. The Defendants' automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers and disconnecting the rest (all without human intervention).

15.     When placing these calls to consumers, the Defendants failed to get the prior express consent required by the TCPA of cellular telephone owners/users as required by the TCPA to make such calls.

16.     As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

17.     Yet in violation of this rule, the Defendants failed to obtain any prior express consent (oral or written) to make these autodialed survey calls to Plaintiff's cellular telephone.

18.     Consumer complaints about the Defendants' invasive and repetitive calls are numerous. For example, several consumers have complained about getting unwanted and repeated calls from the Defendants. As an illustrative example, consumers have complained as follows:

- got a call from this number. Asked for me by name, and indicated this was from a specific store as a follow up survey. Calling this number back got an automated response indicating that all agents were busy for a customer survey service. Still not sure if this is legit. message indicated that you can call 954-427-4504 for follow up.[1]

---

[1] *See* http://800notes.com/Phone.aspx/1-213-486-3729

CLASS ACTION COMPLAINT FOR DAMAGES                                      5
AND INJUNCTIVE RELIF

- Midas calling for a customer service survey.[2]

- Called back is [sic] says it is customer satisfaction follow up -

- Midas customer satisfaction survey[3]

- I had oil changed at Midas muffler weeks ago, and this is some telemarketer saying she is from this company and trying to upsell - I will never go back to Midas again because of this - They are as bad as Omaha Steaks –

- [s]ame as others. They vie called my cell phone multiple times during the daytime over the past month but never left a message from Laos Angel es [sic] CA.[4]

19.    Telemarketers who wish to avoid calling numbers listed on the National Do Not Call Registry can easily and inexpensively do so by "scrubbing" their call lists against the National Do Not Call Registry database. The scrubbing process identifies those numbers on the National Do Not Call Registry, allowing telemarketers to remove those numbers and ensure that no calls are placed to consumers who opt-out of telemarketing calls.

20.    To avoid violating the TCPA by calling registered numbers, telemarketers must scrub their call lists against the National Do Not Call Registry at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

21.    There are numerous third party services that will additionally scrub the call lists for a telemarketer to segment out landline and cellular telephone numbers, since the consent standards differ depending on what type of phone a telemarketer is calling.[5] Indeed, one service notes that they can:

---

[2] *See* http://800notes.com/Phone.aspx/1-213-486-3729/3
[3] *See* https://callsreported.com/2134863729.calls.reported
[4] *Id.*
[5] *See e.g.* http://www.dncsolution.com/do-not-call.asp; http://www.donotcallprotection.com/do-not-call-compliance-solutions-1; http://www.mindwav.com/tcpa_compliance_solution.asp;

CLASS ACTION COMPLAINT FOR DAMAGES                                                    6
AND INJUNCTIVE RELIF

Instantly verify whether a specific phone number is wireless or wireline to learn if
TCPA regulations apply – and verify the identity of the current subscriber to
determine if they are the same party who provided you with consent.[6]

22.     When placing these calls to consumers, Defendants failed to get the prior express

consent of cellular telephone owners/users as required by the TCPA to make such calls.

23.     Furthermore, Defendants call these consumers who are registered on the National

Do Not Call Registry.

24.     Finally, even when consumers try to opt out of future calls by requesting to never

be called again, Defendants continue to call them.

25.     Defendants knowingly made (and continue to make) telemarketing calls to

cellular telephones without the prior express consent of the call recipients. As such, Defendants

not only invaded the personal privacy of Plaintiff and other members of the putative Classes but

also intentionally and repeatedly violated the TCPA.

26.     By making the autodialed telephone calls at issue in this Complaint, Defendants

caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. This

includes the aggravation and nuisance and invasions of privacy that result from the receipt of

such calls, in addition to a loss of value realized for the monies consumers paid to their wireless

carriers for the receipt of such calls. Furthermore, the calls intentionally interfered with the

Plaintiff and the other Class members use and enjoyment of their cellular telephones, including

the related data, software, and hardware components.

27.     The TCPA was enacted to protect consumers from unsolicited telephone calls like

those alleged in this case. In response to Defendants' unlawful conduct, Plaintiff files the instant

lawsuit and seeks an injunction requiring Defendants to cease all unsolicited telephone calling

---

[6] https://www.neustar.biz/services/tcpa-compliance

CLASS ACTION COMPLAINT FOR DAMAGES                                            7
AND INJUNCTIVE RELIF

activities to consumers as complained of herein and an award of statutory damages to the members of the Classes under the TCPA together with costs and reasonable attorneys' fees.

**ALLEGATIONS SPECIFIC TO PLAINTIFF**

28.     Plaintiff is the exclusive user of the cellular telephone number \*\*\*-\*\*\*\*-5410.

29.     On January 17, 2004, Plaintiff registered his cellular telephone number on the National Do Not Call Registry to avoid receiving unsolicited telemarketing calls on his cellular telephone.

30.     On or around the end of October of 2016, Plaintiff brought his car into a Midas location for servicing.

31.     After Plaintiff registered his cellular telephone number on the National Do Not Call Registry, Defendants, either directly, or through their affiliates and agents, made a series of unsolicited telemarketing calls, beginning in December 2016, to Plaintiff on his cellular telephone using an automatic telephone dialing system ("ATDS").

32.     Beginning on or around December of 2016 Plaintiff received a call on his cellular telephone number \*\*\*-\*\*\*\*-5410 from the phone number (213) 486-3729.

33.     Upon answering the telephone call, Plaintiff experienced one to three seconds of "dead air," a hallmark sign that Defendants were and are using an ATDS. After this distinct pause, a live agent came on the line.

34.      The agent explained that the purpose of the call to Plaintiff was to do a survey on behalf of Midas, based on Plaintiff's previous experience with Midas. Plaintiff informed the live agent he was not interested in participating in the survey and appropriately terminated the conversation.

35.     Despite Plaintiff informing the live agent he was not interested and blocking the

CLASS ACTION COMPLAINT FOR DAMAGES                                                  8
AND INJUNCTIVE RELIF

Defendants' number, the Defendants continued to contact Plaintiff on two more occasions. These calls tied up Plaintiff's cellular telephone line, in addition to the nuisance and aggravation of having to attend to unsolicited and repeated calls to his personal cellular telephone. Plaintiff estimates that he received approximately three of these calls in total.

36.     Defendants at all times are and were aware that the above-described autodialed telephone calls were and are being made to consumers like Plaintiff who had not consented to receive them.

37.     By making unauthorized autodialed calls to consumer's cellular telephones as alleged herein, Defendants have caused consumers actual harm. In the present case, a consumer could be subjected to many unsolicited autodialed telephone calls as Defendants opt-out mechanisms do not work.

## CLASS ACTION ALLEGATIONS

38.     In accordance with F. R. Civ. P. 23(b)(1), (b)(2) and (b)(3), Plaintiff brings this case as a class action on behalf of himself as well as the two Classes defined as follows:

**Autodialed No Consent Class**: All persons in the United States who from four years prior to the filing of the initial complaint in this action to the present: (1) Defendants (or a third person acting on behalf of Defendants) called; (2) on the person's cellular telephone number using an ATDS; and (3) for whom Defendants claim they obtained prior express consent in the same manner as Defendants claim they obtained prior express consent to call the Plaintiff.

**Autodialed Stop Call Class**: All persons in the United States who from four years prior to the filing of the initial complaint in this action to the present: (1) Defendants (or a third person acting on behalf of Defendants) called; (2) on the person's cellular telephone number using an ATDS; and (3) after the person informed Defendants that s/he no longer wished to receive calls from Defendants.

39.     Excluded from the Classes are: (1) the Defendants, the Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current and former employees, officers, and directors,

(2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate

Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4)

the legal representatives, successors, or assigns of any such excluded person, and (5) Counsel for

Plaintiff and Defendants.

40.     **Numerosity**: The exact size of the Classes is unknown and not available to

Plaintiff, but it is clear that individual joinder is impracticable. On information and belief, the

Defendants placed calls to thousands of consumers who fall into the definition of the Classes.

Members of the Classes can be readily identified through the Defendants' records and from their

own phone records.

41.     **Commonality and Predominance**: Many questions of law and fact are common

to the claims of Plaintiff and the Class. Those questions predominate over any questions that may

affect individual members of the Classes and will be answerable based upon common evidence

and proof in a single stroke. Common questions for the Classes include, but are not necessarily

limited to the following:

a.      Whether the Defendants' calls violated the TCPA;

b.      Whether the Defendants systematically made telephone calls to members

of the Classes without first obtaining prior express oral or written consent to make

the calls,

c.      Whether the Defendants used an ATDS to make its calls,

d.      Whether the Defendants' apparent defense that certain Classes members

somehow consented to the receipt of its calls by participating in its surveys or by

neglecting to immediately inform the Defendants that such calls were

unauthorized comports or violates the TCPA's requirement of *prior* express

CLASS ACTION COMPLAINT FOR DAMAGES                                                            10
AND INJUNCTIVE RELIF

consent,

e.      Whether Midas oversaw, controlled, or approved of John Does' calls,

received the benefits of such calls, or ratified such calls,

f.      Whether the Plaintiff and the other members of the Classes are entitled to

statutory damages;

g.      Whether Defendants acted willfully so as to require an award of treble or

punitive damages; and

h.      Such additional issues as may be identified through discovery.

42.     **Adequate Representation**: Plaintiff will fairly and adequately represent and

protect the interest of the Classes. Plaintiff has retained counsel who are competent and

experienced in class actions generally and TCPA class actions specifically. Plaintiff has no

interests antagonistic to those of the Classes, and neither Midas nor any of the John Doe

Defendants have defenses unique to Plaintiff. Further, Plaintiff and his counsel are committed to

vigorously prosecuting this action on behalf of the members of the Classes and have the financial

resources to do so. Neither Plaintiff nor their counsel has any interest adverse to the Classes.

43.     **Appropriateness**: This class action is also appropriate for certification because

Midas and the John Doe defendants have acted or refused to act on grounds generally applicable

to the Classes and as a whole, thereby requiring this Court's imposition of uniform relief to

ensure compatible standards of conduct toward the members of the Classes and making final

class-wide injunctive relief appropriate. The Defendants' business practices apply to and affect

the members of the Classes uniformly. Plaintiff's challenge to those practices hinges on the

conduct of Midas and the John Doe defendants with respect to the Classes as a whole, not on

facts or law applicable only to certain members or Plaintiff. Additionally, the damages suffered

by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by the Defendants' actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from the Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**COUNT ONE**
**Violations of 47 U.S.C. § 227** *et seq.*
**(On behalf of Plaintiff and the Autodialed No Consent Class)**

44.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

45.     The Defendants made autodialed telephone calls to cellular telephone numbers belonging to Plaintiff and other members of the Autodialed No Consent Class without first obtaining prior express consent to receive such calls.

46.     The Defendants made the telephone calls using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention.

47.     The telephone dialing equipment utilized by the Defendants, also known as a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner. The Defendants' autodialer disseminated information *en masse* to Plaintiff and other consumers.

48.     By making the unsolicited telephone calls to Plaintiff and other members of the Autodialed No Consent Class' cellular telephones without their prior express consent, and by

utilizing an automatic telephone dialing system to make those calls, the Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

49.     As a result of Defendants' unlawful conduct, Plaintiff and the members of the Autodialed No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular telephones and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA.

50.     Should the Court determine that Defendants' conduct was willful and knowing, the Court may, pursuant to 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed No Consent Class.

**<u>COUNT TWO</u>**
**Violation of 47 U.S.C. § 227 *et seq*.**
**(On behalf of Plaintiff and the Autodialed Stop Call Class)**

51.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

52.     Defendants made autodialed telephone calls to cellular telephone numbers belonging to Plaintiff and other members of the Autodialed Stop Call Class without first obtaining prior express consent to receive such calls.

53.     Defendants made the autodialed telephone calls using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention.

54.     The telephone dialing equipment utilized by Defendants, also known as a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner. Defendants' ATDS disseminated information *en masse* to Plaintiff and other consumers.

CLASS ACTION COMPLAINT FOR DAMAGES                    13
AND INJUNCTIVE RELIF

55.    By making the unsolicited telephone calls to Plaintiff and the Autodialed Stop Call Class members' cellular telephones without their prior express consent, and by utilizing an automatic telephone dialing system to make those calls, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

56.    Plaintiff and other members of the Autodialed Stop Call Class expressly requested that Defendants no longer place calls to them, after which Defendants failed to place Plaintiff and other members of the Autodialed Stop Call Class on Defendants' internal do-not-call list (or failed to do so within a reasonable time period).

57.    Following Plaintiff and the members of the Autodialed Stop Call Class' express requests to not receive calls from Defendants, Defendants placed additional calls to them without their consent and in contradiction of their requests not to be called.

58.    Defendants violated 47 C.F.R. § 64.1200 (d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Autodialed Stop Call Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

59.    As a result of Defendants' unlawful conduct, Plaintiff and the members of the Autodialed Stop Call Class are each entitled under 47 U.S.C. § 227(c)(5)(B), are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA.

60.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5)(C), treble the amount of statutory damages recoverable by the members of the Autodialed Stop Call Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff individually and on behalf of the putative Classes, prays for the following relief:

1.      An order certifying the Classes as defined above, appointing Plaintiff as the representative of the Classes and appointing his counsel as Class Counsel;

2.      An award of actual and statutory damages to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

3.      An order declaring that Defendants' actions, as set out above, violate the TCPA;

4.      A declaratory judgment that Defendants' telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

5.      An order requiring Defendants to disgorge any ill-gotten funds acquired as a result of their unlawful telephone calling practices;

6.      An order requiring Defendants to identify any third-party involved in the autodialed calling as set out above, as well as the terms of any contract or compensation arrangement they have or had with such third parties;

7.      An injunction requiring Defendants to cease all unsolicited autodialed calling activities, and otherwise protecting the interests of the Classes;

8.      An injunction prohibiting Defendants from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

9.      An injunction prohibiting Defendants from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

CLASS ACTION COMPLAINT FOR DAMAGES                                      15
AND INJUNCTIVE RELIF

10.     An injunction prohibiting Defendants from conducting any future telemarketing activities until they have established an internal Do Not Call List as required by the TCPA;

11.     An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above;

12.     Permitting Plaintiff and the Classes leave to amend the Complaint to conform to the evidence presented at trial; and

13.     Such other and further relief that the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff demands trial by jury.

Dated: January 17, 2016                              Respectfully submitted,


                                                     By:  /s/ Stefan Coleman
                                                     Stefan Coleman
                                                     (Law@Stefancoleman.com)
                                                     Adam T. Savett*
                                                     (Adam@Stefancoleman.com)
                                                     LAW OFFICES OF STEFAN COLEMAN, P.A.
                                                     201 South Biscayne Boulevard, 28th Floor
                                                     Miami, Florida 33131
                                                     Telephone: (877) 333-9427
                                                     Facsimile: (888) 498-8946

                                                     *Counsel for Plaintiff and the Putative Classes*

                                                     * Motion for admission to be filed